# United States District Court

NORTHERN DISTRICT OF GEORGIA

ORIGINAL

UNITED STATES OF AMERICA
v.

ANDREW MONROE

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:13-MJ-180

FILED IN CHAMBERS
FEB 11 2013
U.S. MAGISTRATE JUDGE
N.D. GEORGIA

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. Beginning in or about November 2012 and continuing through December 2012, in Henry County and elsewhere in the Northern District of Georgia, the defendant did,

conspire to obstruct and affect commerce by unlawfully obtaining United States currency from another person, with the consent of that person, said consent having been induced under color of official right and attempt to possess with intent to distribute cocaine, a Schedule II controlled substance

in violation of Title 18, United States Code, Section 1951 and Title 21, United States Code, Section 841.

I further state that I am a agent of the Federal Bureau of Investigation (FBI) and that this complaint is based on the following facts:

See Attached Affidavit

Continued on the attached sheet and made a part hereof.        (X) Yes ( ) No

Signature of Complainant
James P. Hosty, IV

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to before me, and subscribed in my presence

February 11, 2013                            at    Atlanta, Georgia
Date                                                City and State

Alan J. Baverman
United States Magistrate Judge                      _____
Name and Title of Judicial Officer                  Signature of Judicial Officer
AUSA Brent A. Gray

## AFFIDAVIT IN SUPPORT OF ARREST WARRANT
## FOR ANDREW MONROE

I, James P. Hosty, IV, being duly sworn, depose and state the following:

1.  I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed for approximately 7 years. I am currently assigned to the Atlanta, Georgia office and work on the Civil Rights/Human Trafficking/Public Corruption Squad, which has the responsibility for investigating police corruption, among other federal crimes. I am a law enforcement officer of the United States, FBI, U.S. Department of Justice, within the meaning of Title 18, United States Code, Section 3052, which includes being an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses pursuant to Title 18, United States Code, Section 3052.

2.  During my law enforcement career, I have participated in dozens of investigations relating to drug trafficking and police corruption. I have received specialized training in the methods and techniques used by drug trafficking organizations. I have debriefed many witnesses and confidential informants about drug trafficking generally, as well as the specific practice of employing corrupt law enforcement officers as part of a drug trafficking scheme. Through this training and experience, I have become familiar with many of the patterns of activity exhibited by drug traffickers. Except where I state that I am relying on my training and experience as described here, the information in this affidavit is based on information and belief, the source of that information and basis for that belief being my own investigation and information obtained by other law enforcement agents.

3.  I submit this affidavit in support of a warrant for the arrest of ANDREW MONROE for conspiracy to commit extortion under color of official right in violation of Title 18, United States

Code, Section 1951, and attempted possession with the intent to distribute cocaine in violation of Title 21, United States Code, Section 841.

## BACKGROUND OF INVESTIGATION

4. Based on my training and experience, I know that sophisticated drug trafficking groups distribute narcotics using a variety of covert methods that are designed to avoid detection by law enforcement and others. If detected, they are aware law enforcement will seize the drugs and money and arrest them. They also know that other drug dealers or criminal groups will rob them, if given a chance, stealing both the drugs and money. In the worst case, drug deals can turn violent.

5. Given these risks, drug traffickers occasionally attempt to enlist law enforcement officers to provide protection both for them and the drug transactions they conduct. In employing corrupt police officers at a drug deal, the traffickers hope to prevent rival groups from intervening and ultimately stealing their drugs and the drug proceeds. Additionally, they hope to keep legitimate law enforcement at bay by positioning a visible law enforcement presence at or near the drug transactions. In these cases, drug traffickers are willing to pay thousands of dollars to corrupt law enforcement officers who will provide protection for these transactions.

6. In August, 2011, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) was investigating a street gang in the Metro Atlanta area. During the course of that investigation, a confidential informant (CI-1) provided information about the gang's criminal activities. CI-1 told federal agents that police officers were involved in protecting the gang's activities, including their drug trafficking crimes. In general, these police officers, in uniform, driving police vehicles or otherwise displaying indicia of their positions, protected the drug dealers from being detected or arrested by other law enforcement officers and from being robbed by other drug dealers. The

information provided to federal agents by CI-1 regarding the use of law enforcement officers to protect drug deals is consistent with my experience and training in the investigation of similar cases.

7. CI-1, who had been working with federal agents since August, 2011, communicated to gang members and their associates that CI-1 would need police protection for his/her upcoming drug transactions. Shortly thereafter, Shannon Bass, Jerry B. Mannery, Jr., and Elizabeth Coss, none of whom are law enforcement officers, began identifying to CI-1 law enforcement officers interested in protecting his/her drug deals. Once those individuals were identified, information regarding the location and circumstances of the proposed drug deals was relayed to CI-1 and/or Shannon Bass, Jerry B. Mannery, Jr., Elizabeth Coss for him/her to pass along to law enforcement officers who expressed an interest in protecting the drug transactions.

## FACTS ESTABLISHING PROBABLE CAUSE

8. On two separate occasions, beginning in or about November, 2012 and continuing through December, 2012, ANDREW MONROE, a sergeant with the Forest Park Police Department (FPPD), provided protection for what he believed to be drug transactions involving multiple kilograms of cocaine.

9. ANDREW MONROE has worked as a police officer with the FPPD since January, 2002.

10. <u>Drug Transaction on November 5, 2012.</u> On November 5, 2012, FBI and the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) agents surveilled a meeting between ANDREW MONROE and FPPD Sergeant Victor Middlebrook at a Kroger store, 1750 Hudson Bridge Road, Stockbridge, Georgia. After talking, ANDREW MONROE and Middlebrook got into separate personal vehicles and parked in stalls near the gas pumps. Then, CI-1 arrived at the store parking lot and also parked near the gas pumps. A short time later, CI-2 arrived and parked next

to CI-1. CI-2 got out of his/her vehicle carrying a backpack and got into CI-1's vehicle. At that point, Middlebrook, dressed in plain clothes but wearing a police badge and a firearm in a holster on his belt, got out of his vehicle and appeared to be watching CI-1's vehicle. Inside CI-1's vehicle, CI-1 provided CI-2 a backpack containing three kilograms of counterfeit cocaine. In exchange, CI-2 gave CI-1 a backpack containing $5,200. CI-2 got out of CI-1's vehicle with the backpack containing the counterfeit cocaine and left the parking lot. Then, as prearranged, ANDREW MONROE followed CI-2 until CI-2 reached Interstate 75. Middlebrook and CI-1 drove separately to the Quick Trip, 1614 Hudson Bridge Road, Stockbridge, Georgia. At the Quick Trip, Middlebrook got into CI-1's vehicle and took the $5,200 payment from CI-1. Middlebook then drove from Quick Trip to Fire House Subs, 1465 Hudson Bridge Road, Stockbridge, Georgia. There, Middlebrook met ANDREW MONROE . These transactions were audio and video recorded.

11.     Drug Transaction on December 7, 2012. On December 7, 2012, FBI and ATF agents surveilled a meeting between ANDREW MONROE, Middlebrook and CI-1 inside a Kroger store, 1750 Hudson Bridge Road, Stockbridge, Georgia. During that meeting, CI-1 told ANDREW MONROE and Middlebrook that the prearranged drug transaction that was to take place immediately would be "a three brick deal." After talking, ANDREW MONROE, Middlebrook and CI-1 walked into the parking lot and got into separate vehicles. Middlebrook parked near the gas pumps, directly behind CI-1. ANDREW MONROE parked nearby. Then, CI-2 arrived at the store parking lot and parked next to CI-1. CI-2 got out of his/her vehicle carrying a backpack and got into CI-1's vehicle. At that point, Middlebrook, dressed in plain clothes but wearing a police badge and a firearm in a holster on his belt, got out of his vehicle and appeared to be watching CI-1's vehicle. Inside CI-1's vehicle, CI-1 provided CI-2 a backpack containing three kilograms of counterfeit cocaine. In exchange, CI-2 gave CI-1 a backpack containing $5,200. CI-2 got out of CI-1's vehicle

with the backpack containing the counterfeit cocaine and left the parking lot. Then, as prearranged, ANDREW MONROE followed CI-2 for a few miles. Middlebrook and CI-1 drove separately to the Quick Trip, 1614 Hudson Bridge Road, Stockbridge, Georgia. At the Quick Trip, Middlebrook got into CI-1's vehicle and took the $5,200 payment from CI-1. Middlebrook then drove from Quick Trip to Fire House Subs, 1465 Hudson Bridge Road, Stockbridge, Georgia. There, ANDREW MONROE met Middlebrook. These transactions were audio and video recorded.

12. In communications leading up to and through the above-described drug transactions, the drug involved was described to ANDREW MONROE as cocaine.

## CONCLUSION

13. Based on the foregoing, I submit there is probable cause to believe that ANDREW MONROE conspired to commit extortion under color of official right in violation of Title 18, United States Code, Section 1951, and attempted to possess with the intent to distribute cocaine in violation of Title 21, United States Code, Section 841.